§ ‘'ÍS S* § % a a* $s i o § § "a -2 ■s cl ^ S’
0-> ET O1 3- &> _ a S 2 <P vT3 ft «4 J * 2 3 -O C5 <U O o E3 ^ CD* d XT, G> C < CT a o T4 a> £ :c a .Bt'cl, o o .S & u -C » CT* o 0 5 £ d O ¡j- Ef g » ® tr*a o <t o 2
■ 1st. It does not appear that the bill of exceptions, taken to the decision of the county court, contains all the evidence. After the plaintiff had given her evidence, it is said, “upon all which, the said negro, by her counsel, moved the court to record said deed of emancipation, which was objected to by John Dejar-net, and the objection sustained by the court,” &c. But it is not said, the defendant did not introduce evidence. And it is not said the plaintiff’s evidence was all giyen on the trial.
*233 This deficiency in a bill of exceptions, has been, times out of number, ruled to be fatal to the parjfy complaining of the decision.
2d. It does not appear that the county court of Oldham had any jurisdiction of this matter. The act of 1798, II. Digest, 1155, Sec. 27, authorized deeds of emancipation to be acknowledged or proved in the county court where the owner resided. And the court has held that the writing by which a slave may be emancipated, under the act of 1800, may also be proved and recorded. And because there is some authority for this opinion, and the question has been considered by the court, nothing more will be said on it.
It is most earnestly contended, that if the writings which have their effect under the act of 1800, are to be recorded, they must be proved and recorded in the county court of the county in which the grantors in the deeds reside, as required in the cases of deeds of emancipation, under the act of 1798. And the instrument of emancipation in this case, was a deed, if any thing; it is sealed. There is no reason for allowing the instrument to be recorded in a distant county, after the grantoris death; and there is in favor of confining the jurisdiction to the county of the grantors, such strong reasons supported by analogy, and all the rules of propriety, that no apprehension is entertained that the court will be inclined to extend the principles of the dictum, in the case of-Marshall.
I do not believe the court will allow such instruments to be proved and recorded in any county court in the state, where the negro may find the justices of the peace, or the clerk, the more suitable to the purpose.
Now, there is no proof in the whole bill of exceptions, of the residence of either the grantor, Dejar-net the elder, or of John Dejarnet, the administrator. And the court may, must, judicially, know the deed offered for record was executed before the county of Oldham was established; whether the grantor resided within the present boundaries of Old-ham, is a matter left entirely at large*
*234 Surely this court will not indulge a presumption, that the residence of the Dejarnets or either of them, was within Oldham, as it now exists. In the cases of the registration of deeds, the certificate of the clerk has no effect, unless it be shown the land conveyed, is situated within the proper county. Hence the clerk, in admitting a deed for land, out of his county, to record, does a void act. And if he were to refuse to do such- an act, surely he would not be compellable, by any -writ of error or mandamus, nor would he be answerable to the party applying to have such act done.
If the county court had entertained the cause and admitted the instrument to record, there might be some pretext, for indulging presumptions in fa-vour of their act; but the justices having refused to admit the paper, no presumption can be indulged against their decision.
But I deny, that if the county of Oldham does now embrace the spot of ground, on which the grantor resided at the time he made thq deed, and when he died, the jurisdiction, would therefore, belong to that county. It was the residence, at the making of the deed, that gave the jurisdiction, and that jurisdiction attached, the instant the deed was executed, and vested in the county court of Jefferson; and we do most earnestly insist, mustst.ill remain there; this is not like the case of an ordinary action, transitory or local. In the case of transitory actions, the execution of the process, gives the jurisdiction. In the case of local actions, it is the local situation of the thing, in controversy, which gives the jurisdiction. I will not stop to inquire, what went with the jurisdiction of the local actions, which originated within thepresent limits of the county of Oldham. Whether the jurisdiction of such cases, appertain to the old counties of Shelby, Henry,and Jefferson; but will refer the court to the act of the legislature, establishing the county, found in Session Acts of-It is to this effect.
But I leave this question, of the local actions, because I do not think, this case governed by the same principles. Here, it was not the thing in controversy, as in the local actions, which gave the ju *235 •risdiction. It was not the act, or the place of the act, but the residence of the party, making the grant, which fixed the jurisdiction. This jurisdiction, I insist, was not affected by any change of residence of the grantor. But be this as it may, the jurisdiction of the county court, could not be ousted, by the estab-lishmentof anew county, which might take off into it, the old residence, now the grave of the grantor. It is impossible to conceive of the mode of such an operation.
2d. It is contended, that even, if the county court had jurisdiction, to admit this instrument to record, no writ of error lies to this court, to compel that court, to record the deed. The first acts for the registration of deeds allowed them to be proved or acknowledged-in court; afterwards, the clerks were permitted to take the proof, or receive the acknow-ledgement of deeds for land, and yet, there never was a case of an appeal or writ of error, from the decision of a county court, refusing or admitting a deed to record. Such a thing never was thought of, by any one.
Again, no appeal, or writ of error, ever was attempted, in either Virginia or Kentucky, from any decision of the county court, refusing or admitting to record, a deed of emancipation.
Suppose this court now, “set to,” and take jurisdiction of the controversies in the county courts, in relation to deeds of emancipation, (and it is likely, they may beepme numerous.) Will you not be bound to entertain also the cases arising out of deeds of conveyance?
But the county courts are not now, usually applied to, to admit deeds for land to record; they may, however, be applied to now; but what will the court do with the erronéous decisions of the clerks of the county court?
Might not the plaintiff in this case, apply to the clerk, as well as to the county court? 1 do not see why, if indeed, the decision is to stand, which allows such instruments to be recorded, any where, they shall not be recorded, as other instruments of conveyance, are allowed to be registered.
*236 But the clerks are permitted to receive proof of such papers, find can this court say the like cases, before the county court, shall be revised here, and the decision of the clerk, remain unalterable? Or how will you approach the clerks? by mandamus? or how? And why shall not the county courts be approached in the same mode?
Is this power of hearing, proof of deeds, and admitting them to record, judicial? or what is it? How is it that it is exercised by both clerks and courts? and this too, notwithstanding the constitution has divided the executive and judicial power?
But this court, has given costs against the owner of this slave, in her favor, without deciding whether she is free or not. In feet she is left by the opinion, just as the county court left her, excepting, thatitis now proposed, the instrument must be recorded. In this, it is hoped, the court may be inclined to reconsider.
Again, if such deeds are to be proved and recorded, ought this not to be offered in the grantors lifetime,
A re-hearing is prayed.
The petition for a re-hearing overruled.